Max Barash, Respondent, v. The Board of Education, School District of the City of New York, Appellant.

First Department, May 24, 1929.

*Elliot S. Benedict* of counsel [*Thomas W. A. Crowe* and *J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel,* attorney], for the appellant.

*Asa B. Kellogg* of counsel [*Kellogg & Rose,* attorneys], for the respondent.

O'Malley, J. Plaintiff's judgment against the defendant board of education is predicated upon a breach of contract. The breach asserted is the defendant's refusal to pay plaintiff for extra work

performed and materials furnished. The defendant denies such breach and claims that no extra work was done or required and that it has paid plaintiff the full contract price.

The contract called for certain fireproof or prevention work on Public School 94, New York city, which had been ordered by the fire department. The work was to be done on certain windows opening on a light shaft. The windows were to be equipped with kalamein frames, sash, transoms, trim, etc. The particular work was detailed under the subject, " Kalamein Work," in the specifications as follows: " Install in all openings from light shaft, new pulley hung kalamein frames, sash, transom, trim, etc., complete, fitted with approved self-closing device, and all hardware, complete; pole socket, lift, etc., as per plans, General and Detail Specifications."

The contract price was $4,145. The plans showed new and old windows opening on the shaft in question.

After finishing the new windows the plaintiff demanded the full contract price. The defendant refused payment until work on all windows was done. The plaintiff, under protest, then completed the work on the old windows at an alleged cost of $1,950.86. The action was to recover this sum. The defendant conceded the reasonable value of the alleged work to be $1,500 and judgment for this sum, with interest and costs, resulted.

Our conclusion is that the plaintiff may not recover and that his complaint should have been dismissed. Unquestionably the plans must be read in connection with the specifications and the contract. The appellant itself so concedes. But such construction does not aid the plaintiff. He was not entitled to rely upon the plans alone, but was required to resort to the contract provisions and the specifications (*Dean* v. *Mayor, etc., of New York,* 167 N. Y. 13); and if in doubt as to the character and extent of the work called for, to seek explanation from the superintendent of school buildings. The contract provides that " Any doubt as to the meaning of these specifications, or of the plans in connection therewith, or any obscurity in the wording, will be explained by the Superintendent of School Buildings, and all directions and explanations required, alluded to or necessary to complete any of the provisions of these specifications and the plans, and give them due effect, will be given by him."

Moreover, the plaintiff himself was under a duty in the circumstances to examine the work and make investigation for himself. (*Lentilhon* v. *City of New York,* 102 App. Div. 548, 558; affd., 185 N. Y. 549.)

By the cover of the contract pamphlet, the information for

bidders contained therein, as well as by the contract and specifications, he was charged with notice of the nature of the work to be done. It had been ordered for fire protection purposes to a public school. The windows or openings leading from the shaft were to be made safe for the protection of life and limb, and in such circumstances it was wholly unreasonable for the plaintiff to suppose that protection was to be given only to new windows or openings, and that the old were to be left in their original unprotected state. The specifications provided that " the entire work on each school shall be given out in one contract." In the face of such provision the plaintiff had no right to assume that he was to do only a part of the work and that the balance was to be let to another contractor. It was the whole shaft that was to be made safe.

Plaintiff testified that he interpreted the plans to mean that the heavier shading thereon indicated new windows and the lighter shading those already there and that under the circumstances he was required only to do the windows. The plan itself, however, was entitled: " Fire Protection Work — New Kalameined Court Yard Windows." There were apparently seven new and four old windows. It is true that the plans indicated new windows by heavier lines, but for the reasons heretofore given we are of opinion that plaintiff's interpretation of such plans was not justified and that all of the windows were to have the protection intended by the order of the fire department. The word " new " as used in the quotation last above, applied to all of the windows after they had been kalameined.

Moreover, under the contract the duty of interpreting the plans rested not upon the plaintiff, but upon the superintendent of schools. It contained the following provision: " (O) To prevent all disputes and litigation, the Superintendent shall in all cases determine the true construction of the plans and drawings or specifications hereinbefore mentioned, or any part thereof, and he shall in all cases decide every question which may arise relative to the execution of this contract, or the work and materials to be done and provided hereunder, on the part of the Contractor, and his decision shall be final and conclusive upon the Contractor; and such estimate and decision, in case any question shall arise, shall be a condition precedent to the right of the Contractor to receive any money under this Contract."

The superintendent made his interpretation in a letter which was introduced in evidence by the plaintiff and this was to the effect that the plaintiff was " required to furnish and install the kalamein windows as called for in the specification." In view of

this it was unnecessary for the defendant to introduce any evidence on this issue on the trial. Its superintendent was the final arbiter and his decision was binding unless fraud, bad faith, falsity or palpable mistake or error of law was shown. (*Sweet* v. *Morrison*, 116 N. Y. 19; *Neidlinger* v. *Onward Construction Co.*, 107 App. Div. 398; affd., 188 N. Y. 572.)

If, however, it might be said that any duty of interpretation rested upon the plaintiff, he had already made such during the progress of the work. He wrote to the deputy superintendent of school buildings complaining about the condition of the plaster on the shaft and requested that an inspection be made in order that he might not be held responsible. His letter opened with the following sentence: " In accordance with my contract, I am to install in *all* openings from light shaft, new pulley hung kalamein frames, sash, transom, trim, etc." (Italics ours.)

In testifying the plaintiff offered no explanation of the language used in this letter.

It follows that the judgment should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., MERRELL, MARTIN and PROSKAUER, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.