**UNITED STATES of America,
Plaintiff-Appellant,**

**v.**

**John P. HANNON, Defendant-Appellee.**

**No. 10, Docket 83–6070.**

United States Court of Appeals, Second Circuit.

Submitted Oct. 13, 1983.

Decided Feb. 16, 1984.

---

* Of the United States Court of Appeals for the    Sixth Circuit, sitting by designation.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Salvatore R. Martoche, U.S. Atty., W.D.N.Y., Buffalo, N.Y., C. William Lengacher, and David V. Seaman, Civil Div., Dept. of Justice, Washington, D.C., submitted a brief for plaintiff-appellant.

Nicholas Konst, Depew, N.Y., for defendant-appellee. (No brief submitted).

Before KAUFMAN, NEWMAN and DAVIS,* Circuit Judges.

DAVIS, Circuit Judge:

The question in this case is whether the appellant (the Government) may sue on a federal money judgment it previously obtained against the appellee (Hannon), in order to renew that judgment for the balance of the amount still unpaid plus accumulated interest. We hold that such a suit is proper. Accordingly, we reverse the district court's denial of summary judgment to the Government, its corresponding grant of summary judgment to Hannon, and its dismissal of the Government's complaint. The case is remanded to the district court with instructions to enter a new money judgment against Hannon.

I

On October 3, 1968, the Government filed a complaint in the district court for the Western District of New York against Hannon and two other parties, seeking judgment on a defaulted note. Hannon and one of the other parties failed to appear, answer, or raise any objection to the complaint.[1] The court entered a default judgment against them for $4,514.67 on June 2, 1969. On June 10, 1969, the default judgment was docketed in the Erie County Clerk's office and became a lien on Han-

---

* Honorable Oscar H. Davis, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

1. The third party did respond to the complaint and ultimately reached a settlement with the Government. He was dismissed as a party on May 17, 1973.

non's local realty pursuant to 28 U.S.C. § 1962 (1976).[2]

According to the Government, Hannon made eight partial payments on the judgment between 1973 and 1976, reducing his obligation by $625.00.[3] The Government also alleges that it sought several writs of execution between 1974 and 1977, but was not successful in obtaining any levies on Hannon's property. The lien resulting from the 1969 judgment expired by New York law on June 2, 1979, ten years after the judgment was docketed.[4]

Following the expiration of the New York lien period, the Government again filed (in January 1982) a complaint against Hannon, seeking a judgment on the balance of the 1969 judgment plus accumulated interest. On January 21, 1983, the court denied the Government's motion for summary judgment on its complaint and, treating Hannon's oral opposition[5] to the Government's motion as a cross-motion for summary judgment, granted that cross-motion and dismissed the Government's complaint. The court said that the Government could not sue to renew the prior money judgment since the "only purpose served ... is to reduce to judgment the interest on the former judgment". In the court's view, this would result in an award of "interest on interest" exceeding the rate of interest allowed pursuant to 28 U.S.C. § 1961.[6]

2. Section 1962 has remained unaltered since the docketing of the default judgment against Hannon in 1969. It adopts the applicable state law regarding liens resulting from judgments:

Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State.

The New York law thus adopted by the federal statute provides:

(a) Immediately after filing the judgment-roll the clerk shall docket a money judgment * * *.

(b) * * * A transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment in the same manner and with the same effect as a judgment entered in the supreme court within the county.

(c) A judgment is docketed by making an entry in the proper docket book * * *.

N.Y. CPLR § 5018 (McKinney Supp.1964–1982).

No transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor * * * from the time of the docketing of the judgment with the clerk of the county in which the property is located until ten years after filing of the judgment-roll * * *.

N.Y. CPLR § 5203(a) (McKinney 1978).

3. In his answer to the Government's complaint in the action, Hannon summarily denied the allegation that he had made these payments. Since the Government concedes that the payments were in fact made, we will not hold Hannon liable for the amount they represent, despite his denial (undoubtedly inadvertent) of having paid anything on the judgment.

4. New York law, adopted by 28 U.S.C. § 1962 (1976), provides that a lien is effective only "from the time of the docketing of the judgment with the clerk of the county in which the property is located until ten years after filing of the judgment-roll". CPLR § 5203(a) (McKinney 1978). Because the "filing of the judgment-roll" occurred on June 2, 1969, the New York lien period expired ten years later, on June 2, 1979. See note 2, supra.

5. The court heard oral argument from both parties on July 12, 1982.

6. Prior to October 1, 1982, 28 U.S.C. § 1961 (1976) provided:

Interest shall be allowed in any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State law.

Since October 1, 1982, 28 U.S.C. § 1961 (West Supp.1983) has provided:

(a) Interest shall be allowed on any money judgment in a civil case recovered in a dis-

## II

Federal courts have consistently recognized that a party who obtains a federal money judgment against a second party may later bring an action upon that judgment, although not upon the original cause of action. *See, e.g., Gaines v. Miller,* 111 U.S. 395, 399, 4 S.Ct. 426, 427, 28 L.Ed. 466 (1884); *United States v. Kellum,* 523 F.2d 1284 (5th Cir.1975); *Indemnity Ins. Co. v. Smoot,* 152 F.2d 667 (D.C.Cir.), *cert. denied,* 328 U.S. 835, 66 S.Ct. 981, 90 L.Ed. 1611 (1946); *United States v. Levin,* 550 F.Supp. 859 (E.D.Mo.1982); *United States v. Estes,* 448 F.Supp. 971, 976–77 (N.D.Tex.1978). *See generally* Restatement (Second) of Judgments § 18 comment c (1980).

Although the lien on Hannon's realty expired in 1979, the judgment itself continued, and the Government was free to bring an action to renew that judgment in order to revive the lien, or for any other purpose. *See Kellum, supra,* at 1287; *United States v. Overman,* 424 F.2d 1142, 1147 (9th Cir. 1970).

There is no applicable limitation bar in New York law even if it assumed (contrary to *Kellum, supra,* at 1286–87 and *Overman, supra,* at 1147) that a state statute could limit the Federal Government's right to sue for a renewed judgment. The federal limitation statute, 28 U.S.C. § 2415 (1976), refers only to contract and tort actions and is inapplicable to actions on judgments. *Kellum,* at 1287; *United States v. Johnson,* 454 F.Supp. 762, 763 (D.Idaho 1978); *United States v. Welborn,* 495 F.Supp. 833, 836 (M.D.N.C.1980).

In his answer to the Government's complaint, Hannon alleged that the original debt was not supported by adequate consideration. This would have been a proper defense in the original action, but may not be considered in a suit to renew the judgment. *Indemnity Ins. Co. of America, supra,* at 669; Restatement (Second) of Judgments § 18 comment c (1980).

The ground for the district court's denial of summary judgment to the Government and its simultaneous granting of such relief to Hannon may have been the court's mistaken belief that New York law does not permit the awarding of interest on interest, in the sense that the new judgment would thereafter bear interest on the total of the principal plus accrued interest since 1969. To the contrary, when a prior judgment consisting of both principal and accumulated interest is not paid, a court renewing the judgment may award interest on the entire amount due. *See Hellenic Lines Limited v. Gulf Oil Corporation,* 359 F.2d 403, 404 (2d Cir.1966); *Dorey v. Dorey,* 609 F.2d 1128, 1133 (5th Cir.1980). Appellant seeks and is entitled to a new judgment for the amount of the unpaid principal plus accrued interest, at the appropriate rates. *Cf. Kotsopoulos v. Asturia Shipping Co.,* 467 F.2d 91, 95 (2d Cir.1972); *Grunenthal v. Long Island Railroad Co.,* 418 F.2d 1234, 1235 (2d Cir.1969).

For these reasons, we reverse the district court's decision on the parties' motions for summary judgment and its dismissal of the Government's complaint. We remand the case to the district court with instructions to enter a new money judgment against Hannon for the amount of the unpaid principal plus accrued interest from June 2, 1969, the date of the original judgment, to the date the new judgment is entered.[7]

---

trict court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

(b) Interest shall be computed daily to the date of payment ... and shall be compounded annually.

7. Interest accrued on the 1969 judgment from June 2, 1969 through at least September 30, 1982 pursuant to 28 U.S.C. § 1961 in accord-

Once the new judgment issues, interest will accrue on it at the Treasury bill rate and will be compounded annually, pursuant to 28 U.S.C. § 1961 (West Supp.1983).[8]

NEWMAN, Circuit Judge, concurring:

Whether and in what circumstances a second judgment may enter that bears interest on the interest accrued on a first judgment is a matter less clear than the majority opinion suggests. To support such compounding of post-judgment interest, the majority relies upon our prior decision in *Hellenic Lines Limited v. Gulf Oil Corp.*, 359 F.2d 403 (2d Cir.1966), and the Fifth Circuit's decision in *Dorey v. Dorey*, 609 F.2d 1128 (5th Cir.1980), which read *Hellenic* as permitting compounding of post-judgment interest. *Hellenic* is not authority for permitting a party to achieve compounding of post-judgment interest by securing entry of a second judgment. The first judgment in that case, dated March 30, 1964, had awarded pre-judgment interest, *i.e.*, interest on the amount of the claim to the date of judgment. 359 F.2d at 404. The first judgment properly bore interest on its total sum, *i.e.*, the amount of the damages plus pre-judgment interest. In affirming the district court's entry of the second judgment, our Court simply noted that the total sum of the first judgment had not been paid and "interest has been running on it." *Id.* Examination of the briefs reveals that appellant complained only of the allowance of post-judgment interest on pre-judgment interest, and appellee asserted a claim only to this traditional type of compounding. No claim was made for compounding of post-judgment interest. Moreover, the records reveal that the new judgment, entered October 29, 1965, stated that the post-judgment interest was to run from March 30, 1964, the date of the first judgment. Thus, the new judgment simply renewed the plaintiff's right to recover the sum of the original judgment plus interest on that judgment from its date until payment. Nothing in the Court's opinion nor in the records of the case supports compounding of post-judgment interest, *i.e.*, a second judgment entered for the sum of the first judgment plus interest accrued from the date of the first judgment to the second judgment, with interest running on the total of the second judgment.

Since 28 U.S.C. § 1961 (1964), as it was phrased at the date the United States secured its first judgment, permitted post-judgment interest at the rate provided by state law and was silent as to whether simple or compound interest was contemplated, it may be permissible to apply state law in determining whether the second judgment should include the interest accrued from the date of the first judgment or be limited to the principal sum of that judgment with a provision that interest runs on that sum until payment, calculated at the different rates applicable to the pertinent time periods. New York law appears to permit compounding of post-judgment interest in a second judgment, *Yonkers Contracting Company, Inc. v. New York State Thruway Authority*, 25 N.Y.2d 1, 302 N.Y.S.2d 521, 250 N.E.2d 27 (Ct.App.1969), *modified* 26 N.Y.2d 969, 311 N.Y.S.2d 14,

ance with New York state law during this time period. (Prior to its amendment by the Federal Courts Improvement Act of 1982, 28 U.S.C. § 1961 provided that interest would accrue on federal district court judgments at the rate allowed by the law of the state in which the court is held. *See* note 6, *supra*.) *See also Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91, 95 (2d Cir.1972); *Grunenthal v. Long Island Railroad Company*, 418 F.2d 1234, 1235 (2d Cir. 1969). The district court will have to determine whether interest accruing after October 1, 1982 until the entry of the new judgment should be calculated at the Treasury bill rate in accordance with the current version of 28 U.S.C. § 1961 which became effective on that

date. *See* note 6, *supra*. The same is true with respect to the new provision for compounding. The parties have not addressed these issues and we do not decide them.

In order to accurately compute the amount of accumulated interest for the time periods involved, the district court must also determine the precise dates on which Hannon made each of his eight partial payments on the 1969 judgment unless the parties can agree upon a stipulated judgment. The Government alleges that all of the payments were made between 1973 and 1976. *See supra*.

8. *See* note 6, *supra*.

259 N.E.2d 483 (Ct.App.1970); *D'Angelo v. State of New York,* 200 Misc. 657, 106 N.Y. S.2d 350 (Ct.Cl.1951), though the matter is not free from doubt, *see Cahn v. Cahn,* 119 Misc.2d 150, 462 N.Y.S.2d 535 (N.Y.City Civ. Ct.1983) (renewal judgment does not include interest accrued from the date of the first judgment); *Beneficial Discount Co. v. Spike,* 91 Misc.2d 733, 398 N.Y.S.2d 651 (Sup.Ct.1977) (execution on judgment permitted for interest from judgment to payment, not compound interest for post-execution interest on interest from judgment to date of writ of execution). Moreover, the United States has an entirely legitimate reason for securing a second judgment in this case—to renew its judgment lien, which has expired pursuant to state law. That circumstance and the likely authority for compounding of post-judgment interest under state law persuades me to agree with the majority's direction that the new judgment should include interest accrued from the date of the first judgment on the unpaid balance. I therefore concur in Judge Davis's opinion.

However, it is important to recognize that by ordering such a result in this case we are not recognizing a general right to obtain compounding of post-judgment interest every time a plaintiff chooses to secure a second judgment. Caution in this area is especially warranted now that Congress has amended the interest-on-judgments statute in two significant respects: (1) the state law rate has been displaced in favor of the Treasury bill rate prevailing just prior to the date of the judgment, and (2) annual compounding is specified. *See* 28 U.S.C.A. § 1961(a), (b) (West Supp.1982). It remains to be determined in subsequent cases whether a judgment-creditor can gain either an increased interest rate or more than annual compounding by securing entry of a second judgment.